UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NICOLE K. OSBORN,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

Defendant.

NO. C13-1948-RSM-JPD

REPORT AND RECOMMENDATION

Plaintiff Nicole K. Osborn appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED.

## I. FACTS AND PROCEDURAL HISTORY

At the time of the most recent administrative hearing, plaintiff was a thirty-five year old woman with the equivalent of a high school education and nine months of technical training in office administration and word processing. Administrative Record ("AR") at 486-87, 712-19. Her past work experience includes employment as a fast food restaurant cashier, production

assembly line cabinet maker, collections agent, flagger, and paraprofessional substitute at the Granite Falls School District. AR at 60, 484-86, 720-21, 733-36. Plaintiff was last gainfully employed as a secretary in February 2007 and as a paid childcare provider in the October and November 2007. AR at 460-61, 472-73, 722, 731-32.

Plaintiff filed applications for SSI payments and DIB on August 30, 2005 and January 3, 2006, respectively, alleging a disability onset date of January 1, 2002. AR at 26, 59C, 59I, 774. During her first administrative hearing, however, plaintiff amended her alleged onset date to January 10, 2003. AR at 459. Plaintiff asserts that she is disabled due to degenerative joint disease of the right knee following two arthroscopic surgeries for meniscal tears in 2004 and 2006, as well as obesity and depression. AR at 457, 463-66, 468-71, 716-17.[1]

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 51, 54-59, 774. Plaintiff requested a hearing, which took place on April 20, 2009. AR at 49, 455-91. On May 13, 2009, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 11, 25-26.

The Appeals Council reviewed additional evidence submitted by the plaintiff, but denied plaintiff's request for review. AR at 4-7. On February 22, 2010, plaintiff appealed to the U.S. District Court. By Order dated October 6, 2010, the undersigned reversed and remanded for further proceedings consistent with the Court's instructions. AR at 500-25.[2] On

---

[1] At the most recent hearing, plaintiff's representative testified that although plaintiff's physicians have recommended a total replacement of plaintiff's right knee, plaintiff is unable to get this surgery because of "what they deem extreme obesity. Her BMI has been through the time period in question, 414 to 48.3." AR at 717. She reported her current weight as 272 pounds. AR at 726.

[2] Specifically, the Court directed the ALJ to re-evaluate plaintiff's credibility without relying on the claimant's failure to lose weight, as well as the lay witness testimony of Jennifer Smith.

October 28, 2010, the Honorable Robert S. Lasnik adopted the Report and Recommendations, and entered judgment. AR at 527-28.

On November 3, 2010, the Appeals Council remanded plaintiff's case to an ALJ for further administrative proceedings. AR at 529-31. Plaintiff testified at a second administrative hearing on August 3, 2011. AR at 712-14. On October 17, 2011, the ALJ found that plaintiff was not disabled because she could perform her past relevant work as a collections agent, or alternatively, that she could perform the jobs of call-out operator (DOT 237.367-014), document preparer (DOT 249.587-018), and surveillance system monitor (DOT 379.367-010). AR at 777-99.[3] The Appeals Council declined to assume jurisdiction over plaintiff's claims, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).[4] On October 31, 2013, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 3.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

[3] The ALJ noted that plaintiff's insured status expired on June 30, 2008. To be entitled to DIB, a claimant must have become disabled on or before the date his or her insured status expires. *See Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998).

[4] For reasons that are unclear, the Appeals Council's action is not included in the administrative record.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV. EVALUATING DISABILITY

As the claimant, Ms. Osborn bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments

are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[5] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

---

[5] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the

Commissioner evaluates the physical and mental demands of the claimant's past relevant work

to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If

the claimant is able to perform her past relevant work, she is not disabled; if the opposite is

true, then the burden shifts to the Commissioner at step five to show that the claimant can

perform other work that exists in significant numbers in the national economy, taking into

consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§

404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the

claimant is unable to perform other work, then the claimant is found disabled and benefits may

be awarded.

## V.     DECISION BELOW

On October 17, 2011, the ALJ issued a decision finding the following:

1.   The claimant meets the insured status requirements of the Social
Security Act through June 30, 2008.

2.   The claimant has not engaged in substantial gainful activity since
January 10, 2003, the amended alleged onset date.

3.   The claimant has the following severe impairments: osteoarthritis and
chondromalacia of the right knee, lumbar degenerative joint disease
(DJD), right great trochanteric bursitis, obesity, and irritable bowel
symdrome (IBS)

4.   The claimant does not have an impairment or combination of
impairments that meets or medically equals the severity of one of the
listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.   After careful consideration of the entire record, the undersigned finds
that the claimant has the residual functional capacity to perform less
than a full range of sedentary work as defined in 20 CFR 404.1567(a)
and 416.967(a).  She is able to lift/carry 20 pounds occasionally and
10 pounds frequently.  She can stand and/or walk (with normal breaks)
for 2 hours in an eight-hour workday.  She can sit (with normal
breaks) 6 hours in an eight-hour workday. She can climb ramps and
stairs occasionally.  She cannot climb ladders, ropes, or scaffolds.  She
cannot kneel, crouch, or crawl.  She should avoid working at

unprotected heights and on uneven surfaces. She needs to briefly shift between sitting, standing, and walking as frequently as once every 30 minutes.

6. The claimant is capable of performing past relevant work as a collections agent. This work does not require the performance of work-related activities precluded by the claimant[']s residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from January 10, 2003, through the date of this decision.

AR at 771-799.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ err by failing to account for limitations caused by plaintiff's irritable bowel syndrome in the RFC assessment?

2. Did the ALJ err by failing to account for plaintiff's mild mental limitations in the RFC assessment?

3. Did the ALJ err in evaluating the lay-witness statements?

4. Did the ALJ err in evaluating plaintiff's credibility?

5. Did the ALJ err at step four by finding that plaintiff could perform her past relevant work as a collections agent as actually or generally performed?

6. Did the ALJ err at step five by failing to identify significant numbers of step-five jobs consistent with the ALJ's finding that plaintiff needed to alternative sitting, standing, and walking?

Dkt. 22 at 1-2; Dkt. 26 at 1-2.

## VII. DISCUSSION

### A. The ALJ Erred by Failing to Account for Limitations Caused by Plaintiff's Irritable Bowel Syndrome in the RFC Assessment

At step two, the ALJ found that plaintiff's "bowel problem is being monitored and has been an issue for more than 12 months. Even though the claimant has yet to receive proper treatment for this condition, the undersigned finds that its symptoms would cause more than minimal limitations in her ability to perform work-related activities." AR at 778-79. As a

result, the ALJ found plaintiff's irritable bowel syndrome ("IBS") to be a severe impairment. AR at 779. However, the ALJ did not include any resulting limitations, such as the need for additional unscheduled bathroom breaks, in the RFC assessment.

Plaintiff argues that the ALJ erred by failing to account for "any non-exertional limitation attendant to Osborn's irritable bowel syndrome." Dkt. 22 at 19. She argues that because the ALJ considered plaintiff's IBS condition severe, there were work-related limitations that needed to be included in the RFC, such as the need for ready access to a bathroom or additional unscheduled work breaks. *Id*.

The Commissioner responds that although the plaintiff has identified an inconsistency in the ALJ's decision, she has not actually shown that her condition caused problems that needed to be included in the RFC. Dkt. 26 at 3. The Commissioner contends that "the ALJ found plaintiff not entirely credible (AR at 796-97) and identified inconsistencies in the claimant's reports with respect to this impairment." AR at 796. For example, the Commissioner argues that contrary to plaintiff's claim that she was unable to leave her room for extended periods, (AR at 747-48), her activities of daily living involved attending regular physical therapy appointments twice per week and caring for her own child and nephew. AR at 797, 722, 727-28. The Commissioner also argues that plaintiff's lay witness, Jennifer Smith, "made no mention of [IBS] symptoms despite the claimant's alleged inability to leave her room for extended periods." AR at 752-55. Finally, the Commissioner argues that plaintiff's other alleged symptoms – three to four trips to the bathroom - are not incompatible with a normal workday. Dkt. 26 at 4 (citing SSR 96-9p (stating that normal work breaks are at two-hour intervals) and WAC § 296-126-092 (three breaks are allowed per current labor/employment law in the state of Washington)). Thus, the Commissioner asserts that plaintiff's need to use the restroom, even during flare-ups of her IBS, are accommodated by a

normal workday and therefore the ALJ did not err by failing to include additional limitations in the RFC. *Id.*

Plaintiff responds that "the Court should reject the Commissioner's improper post hoc rationalizations." Dkt. 27 at 6 (citing *SEC v. Chenery Corp*. 332 U.S. 194, 196 (1947) (holding that post hoc rationalizations are improper)). Plaintiff asserts that the Commissioner did not identify any activity that showed that plaintiff did not need ready access to a bathroom, as attending physical therapy appointments did not prove she did not need to take unscheduled bathroom breaks. *Id*. at 6. Moreover, regular work breaks are at two-hour intervals, and when a person has an urgent need to use a bathroom, the person cannot wait for a regular work break. *See* SSR 96-9p.

The Court agrees with the plaintiff. Plaintiff testified during the hearing that when her IBS flares up she experiences "excessive cramping . . . it's almost bend you over pain . . . I find it hard to breath, it hurts so bad. And then, I will have basically uncontrollable diarrhea . . . it might take a couple, you know, three or four trips to the bathroom to get it under control." AR at 746-47. Plaintiff testified that on days when she experiences a flare, she "cannot get very far from the bathroom. I mean, there's days I don't even leave my bedroom." AR at 747. Plaintiff testified that she experienced flares of her IBS symptoms "at least a week out of the month…a day here, a day there" regardless of what she eats. AR at 747-48. The ALJ acknowledged plaintiff's testimony, noting that plaintiff's IBS "symptoms included excessive abdominal cramping, breathing difficulty, and uncontrollable diarrhea. She stated that she sometimes has to make 3-4 bathroom trips per day when she has a flare-up episode. She said she could not leave her room for a week at a time on a monthly basis." AR at 795. However, the ALJ did not make any accommodation for these symptoms in the RFC assessment. Furthermore, although the ALJ found plaintiff less than fully credible, he did not explain what

part of plaintiff's testimony regarding her symptoms of IBS he considered to be unsupported by the record.

As discussed above, the Commissioner attempts to justify the ALJ's omission by suggesting several post-hoc rationalizations.  However, the Court is unpersuaded that plaintiff's ability to attend periodical physical therapy appointments or care for small children at home demonstrates an ability to work full-time without additional bathroom breaks due to flares of her IBS symptoms.  Similarly, regular work breaks, which are at two-hour intervals, do not adequately accommodate "uncontrollable diarrhea" which would prevent plaintiff from venturing far from the bathroom.

Accordingly, the ALJ erred by failing to account for plaintiff's severe IBS impairment in the RFC assessment, or the resulting hypothetical question posed to the vocational expert.  This error was not harmless, as it is unclear whether plaintiff's past work or any other jobs identified at step five would allow ready access to the bathroom throughout the workday and unscheduled bathroom breaks.  As a result, this case must be remanded for further administrative proceedings.  On remand, the ALJ shall reassess plaintiff's RFC, and explain what limitations result from plaintiff's severe IBS.  If the ALJ finds that no further limitations should be included in the RFC, the ALJ shall adequately explain his or her reasons for rejecting plaintiff's testimony regarding her IBS symptoms.

      B.      <u>The ALJ Did Not Err by Failing to Account for Plaintiff's Mild Mental Limitations in the RFC Assessment</u>

At step two, the ALJ found that plaintiff had two medically determinable mental impairments, depression and anxiety, that were not severe.  AR at 781.  The ALJ found that the record indicates that her mental health symptoms usually abate when her physical pain level decreases.  AR at 781.  For example, "she showed better mood when she was in less pain or

when the pain was controlled by the prescribed medications." AR at 781. Thus, the ALJ found that plaintiff's depression and anxiety "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities" and are not severe. AR at 781. In considering the four broad functional areas in section 12.00C of the Listing (the "paragraph B" criteria) at step three, the ALJ also found "mild limitation" in the third functional area of concentration, persistence or pace. AR at 781. However, the ALJ did not include any limitations related to concentration, persistence or pace in the RFC assessment.

Plaintiff argues that the ALJ erred by finding that plaintiff could perform skilled past relevant work as a collection agent at step four, because "there was no evidence that Osborn's mild mental limitations . . . were consistent with the performance of any semi-skilled or skilled past relevant work." Dkt. 22 at 20. Specifically, plaintiff points to the ALJ's finding that she had "mild limitations in concentration, persistence, or pace" as being inconsistent with a finding that she could perform skilled or semi-skilled work. *Id.*

The Commissioner responds that plaintiff's position "conflates the findings an ALJ must make in the four broad functional areas for purposes of steps two and three, with the residual functional capacity finding." Dkt. 26 at 5. Although an ALJ determines the claimant's degree of limitation in four broad functional areas, including concentration, persistence, or pace, to perform the analysis at steps two and three, this process is not a determination of residual functional capacity. *See* 20 C.F.R. § 404.1520a(c)(3), 404.1520(e)(2), 416.920a(c)(3), 416.920a(e)(2).

The Commissioner is correct. The ALJ did not err by finding "mild" limitations in concentration, persistence and pace at step three, and failing to include such a limitation in the RFC assessment. The degree of functional limitation found at steps two and three of the sequential disability evaluation process is separate and distinct from the RFC assessment

performed subsequently. For example, 20 C.F.R. § 404.1520a(d)(3), 416.920a(d)(3) provides that "If we find that you have a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, we will *then* assess your residual functional capacity." (emphasis added). Similarly, SSR 96-8p provides in relevant part,

> The psychiatric review technique described in . . . [20 C.F.R. § ] 416.920a . . . requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in [the four functional areas noted above in § 416.920a(c)(3), known also as the "paragraph B" criteria]. The adjudicator must remember that the limitations identified in the "paragraph B" ... criteria are *not* an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential [disability] evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process *requires a more detailed assessment* by itemizing various functions contained in the broad categories found in [the "paragraph B" criteria].

1996 WL 374184 at *4.

Here, there was no inconsistency in the ALJ's findings pertaining to plaintiff's mental limitations. The ALJ was not required to include in his assessment of plaintiff's RFC any limitations in concentration, persistence or pace, merely because he had found mild limitations in this area at step three. The ALJ considered plaintiff's mental impairments to be non-severe, and plaintiff has not shown that her mental impairments caused any limitations that were erroneously omitted from the RFC in this case.

C. <u>The ALJ Erred in Evaluating the Lay-Witness Statements of Jennifer Smith</u>

In order to determine whether a claimant is disabled, an ALJ may consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends. *See* 20 C.F.R. § 404.1513(d). Such testimony regarding a claimant's symptoms or how an impairment affects his/her ability to work is competent evidence, and cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). If an ALJ chooses to discount testimony

of a lay witness, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony. *Dodrill*, 12 F.3d at 919.

The ALJ considered the lay witness testimony of plaintiff's friend, Jennifer Smith, but did not find it persuasive. AR at 797. Specifically, the ALJ stated that Ms. Smith "testified that the claimant walked with a limp. However, Dr. Garrison, a trained medical professional, did not notice any limping gait." AR at 797. The ALJ stated that "*the contradictory evidence* establishes that Ms. Smith has exaggerated the claimant's symptoms and limitations." AR at 797 (emphasis added). In addition, "the close relationship between Ms. Smith and the claimant raises questions about whether or not Ms. Smith can be completely objective." AR at 797. The ALJ concluded that "in light of the medical evidence in the record, the lay witnesses' (sic) testimony is not found to be highly persuasive." AR at 797.

As noted above, the undersigned originally remanded this case for further proceedings based, in part, upon the fact that the ALJ erred in evaluating Ms. Smith's testimony. The Court found that the ALJ erred by rejecting Ms. Smith's testimony based upon the lack of corroborating evidence in the medical record under the Ninth Circuit's decision in *Bruce v. Astrue*. 557 F.3d 1113, 1115 (9th Cir. 2009) (providing that an ALJ may not discredit "lay witness testimony as not supported by medical evidence in the record."). *See also Smolen*, 80 F.3d 1273, 1289 (9th Cir. 1996) ("The rejection of the testimony of [the claimant's] family members because [the claimant's] medical records did not corroborate her fatigue and pain violates SSR 88-13, which directs the ALJ to consider the testimony of lay witnesses where the claimant's alleged symptoms are unsupported by her medical records.").

Here, the ALJ asserts that the medical evidence contradicts, rather than fails to support, Ms. Smith's testimony. AR at 797. At first glance, the ALJ's reasoning appears consistent with Ninth Circuit law, which provides that inconsistency or contradiction with medical

records is a germane reason for an ALJ to discount a lay witness's opinion. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("Inconsistency with medical evidence is [a germane] reason [for discrediting lay testimony]."); *Lewis v. Apfel*, 236 F.3d 502, 512 (9th Cir. 2001) (contradictory medical records supported ALJ's rejection of lay testimony as to symptoms). However, the alleged "contradiction" identified by the ALJ is the fact that Dr. Garrison's medical source opinion fails to corroborate Ms. Smith's observation that plaintiff walks with a limp. AR at 797.[6] Thus, despite the ALJ's use of the words "contradictory evidence," the ALJ's treatment of Ms. Smith's testimony may more closely resemble the reasoning prohibited by the Ninth Circuit in *Bruce* than the reasoning approved by *Bayliss* and *Lewis*. In addition, plaintiff may only walk with a limp on days when she is experiencing greater knee pain, and therefore the fact that Dr. Garrison did not observe a limp during her examination, AR at 584-95, does not necessarily "establish[] that Ms. Smith has exaggerated the claimant's symptoms and limitations." AR at 797.

Because this case is already being remanded for further proceedings, however, the Court need not determine whether the ALJ's rejection of Ms. Smith's testimony based upon the lack of corroborating evidence in the record should be considered harmful error. *See Williams v. Astrue*, 2012 WL 1145090, *14 (W.D. Wash. March 14, 2012) ("[A]lthough *Bruce* is the Ninth Circuit's most recent pronouncement on this issue, given that no mention of *Bayliss*, *Lewis* or *Vincent* was made in that case, and that none of the holdings in those earlier decisions concerning this issue were expressly reversed, it is not at all clear whether rejecting lay witness evidence on the basis that it is not supported by the objective medical evidence in

[6] Earlier in the opinion, the ALJ similarly noted that the medical record "do[es] not support the lay witness observations of by (sic) Ms. Smith . . . For example, there is no complaint of leg swelling and no recommendation [of] leg elevation since Dr. Burk's evaluation performed in April 2009." AR at 796. The ALJ therefore rejected Ms. Smith's testimony because the most recent medical opinions failed to corroborate it.

the record is no longer allowed."). The ALJ's second reason for discounting Ms. Smith's testimony – because "the close relationship between Ms. Smith and the claimant raises questions about whether or not Ms. Smith can be completely objective" –clearly ran afoul of Ninth Circuit law. AR at 797. *See Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996) (holding that the ALJ erred by rejecting the lay witness testimony based upon the witness' close relationship with the claimant).

Accordingly, on remand, the ALJ is directed to reconsider his findings with respect to Ms. Smith's lay witness testimony. If the ALJ believes that the medical record contradicts Ms. Smith's testimony, he should provide additional examples beyond the absence of corroborating evidence.

D. The ALJ Erred in Evaluating Plaintiff's Credibility

*1. Standard for Evaluating Credibility*

As noted above, credibility determinations are within the province of the ALJ's responsibilities, and will not be disturbed, unless they are not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Absent affirmative evidence showing

that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

2. *The ALJ Should Re-Evaluate Plaintiff's Credibility on Remand*

As a threshold matter, to the extent the Commissioner contends that the applicable standard of review does not require the ALJ to provide "clear and convincing" reasons for rejecting a claimant's testimony because the Agency's regulations require, at most, only substantial evidence, this argument is foreclosed. Dkt. 26 at 6-7 (citing SSR 96–7p). As discussed above, the Ninth Circuit requires this Court in reviewing an ALJ's treatment of a claimant's testimony to apply the following standard: "If there is no evidence of malingering, the ALJ may reject the claimant's testimony about the severity of the symptoms only by making specific findings stating clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1283–84; *see also Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Moreover, the Ninth Circuit recently denied the Agency's attempts to undermine the clear and convincing standard, stating the suggestion "lacks any support in precedent and must be rejected." *Garrison v. Colvin*, 2014 WL 3397218 at *16, n. 18 (9th Cir. July 14, 2014) (rejecting Agency's argument that the Court should apply a

standard lower than clear and convincing in reviewing ALJ's evaluation of claimant's testimony where there was no evidence of malingering). This Court is bound by the law of the Ninth Circuit. Accordingly, because the ALJ did not find malingering, the Court finds that, in discounting Ms. Osborn's testimony, the ALJ was required to provide clear and convincing reasons that are supported by substantial evidence.[7]

The ALJ found plaintiff not entirely credible because "the objective medical evidence and expert medical opinions (with the notable exception of that made by treating physician, Dr. Burk…) do not support her grim self-assessment." AR at 796. The ALJ did not err by rejecting plaintiff's testimony based, in part, upon the fact that it was unsupported by objective medical evidence. The Ninth Circuit has asserted that although "subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of a claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barchart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); SSR 96–7, *2–3 (the ALJ "must consider the entire case record, including the objective medical evidence" in determining credibility, but statements "may not be disregarded solely because they are not substantiated by objective medical evidence"). Thus, inconsistency between plaintiff's allegations and the objective medical evidence was a relevant factor for the ALJ to consider, among others, in determining plaintiff's credibility.

[7] The Court also notes the ALJ did not identify the standard he applied in assessing Ms. Osborn's testimony and there is thus no basis to conclude the ALJ even applied the standard urged by the Commissioner in her brief to the Court. AR at 796-97.

However, the Court finds that the ALJ's other reasons for rejecting plaintiff's credibility are not clear and convincing. For example, the ALJ found plaintiff not entirely credible because of her appearance and behavior at the hearing. Plaintiff testified that on a good day she could sit for 30-40 minutes and her pain level would be a 4 out of 10 on a pain scale. AR at 796. The ALJ stated that "the undersigned noticed that the claimant managed to sit at the current hearing for a significant length of times (sic), approximately 30 minutes. Favoring her right hip, she had to lean slightly to her left. She appeared to be a little stiff when she rose from the chair, but it was not extremely so." AR at 796. Although an ALJ may consider, in part, his or her own observations, the ALJ's observation at the hearing that plaintiff appeared "stiff" but "not extremely so" is not a clear and convincing reason to reject plaintiff's testimony regarding the severity of her symptoms. The Ninth Circuit has long recognized that "sit and squirm" jurisprudence "has been condemned." *Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985) (holding that the denial of benefits cannot be based on the ALJ's personal observation of the claimant at the hearing when the claimant's statements to the contrary are supported by substantial evidence)).

The ALJ also found that plaintiff engaged in daily activities that were inconsistent with her alleged limitations. AR at 796. Plaintiff argues that the ALJ erred by discounting plaintiff's credibility based upon her statements that "she sometimes spent the entire day in bed," "regularly attends physical therapy appointments two times per week" and "did treadmill exercises for 5 minutes each time." AR at 797. Plaintiff points out that she has engaged in the activities cited by the ALJ only occasionally, and argues that these limited and sporadic activities do not undermine her credibility. Dkt. 22 at 22. The Court agrees.

Because the majority of the ALJ's reasons for rejecting plaintiff's credibility are not clear and convincing, the ALJ is also directed to reconsider plaintiff's credibility on remand.

E. The ALJ Should Reevaluate His Findings at Steps Four and Five

As discussed above, this case is being remanded for a reevaluation of the medical evidence, other source testimony, and plaintiff's credibility. The ALJ's conclusions at steps four and five of the sequential evaluation process are inescapably linked to his prior conclusions regarding this evidence. Accordingly, the ALJ's findings at steps four and five are also reversed and remanded.

VIII. CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **October 2, 2014**. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **October 3, 2014**.

DATED this 18th day of September, 2014.

James P. Donohue

JAMES P. DONOHUE
United States Magistrate Judge